IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THEARON G. BUCKNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 3:24-cv-48-DWD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 1). The Government filed a Response in Opposition to that Motion. (Doc. 8). For the reasons explained below, Petitioner's Motion is **DENIED**.

### I. BACKGROUND

On January 21, 2021, Petitioner was indicted for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *See USA v. Buckner*, No. 21-cr-30012-DWD, Doc. 1 (S.D. Ill.). Petitioner initially pled not guilty to the Indictment; however, on July 13, 2022, he changed his plea to guilty pursuant to a Plea Agreement. *Id.* at Docs. 10, 24, 25.

At the Change of Plea Hearing, the Court conducted a colloquy with Petitioner under Federal Rule of Criminal Procedure 11 to ensure the guilty plea was knowing and voluntary. Defendant assured the Court, while under oath, that he understood: (1) why he was present in Court; (2) he could stop the proceeding at any time to ask questions of counsel; (3) the charge in the Indictment, as reviewed by him and with the Court; (4) the elements that would have to be proven, beyond a reasonable doubt, by the Government

1

to convict him under § 922(g)(1); (5) the possible penalties under the Indictment; (6) the Plea Agreement, which he admitted to reading, reviewing with his attorney, and voluntarily signing; (7) the Stipulation of Facts, which he admitted to reading and voluntarily signing; (8) the factual basis of the Government to be true; (9) he had, but was giving up, the rights to a public jury trial, to trial counsel, to cross-examine Government witnesses, to call his own witnesses, and to testify on his own behalf if he so chose; (10) although he entered the Plea Agreement and "may have reached an agreement as to any aspect of any sentence," the Court "assess[es] the appropriate sentence" and is "not bound by that agreement"; (11) the Court's "independent assessment as to the appropriate sentence…may agree with what you and the government have decided" or "[i]t might not"; (12) if the Court accepted Petitioner's guilty plea, he would "be bound by all of the terms in the plea agreement"; (13) he was limiting the bases on which he could file an appeal; and (14) "even though the [sentencing] guidelines may provide for a range," the Court has "the ability, the power, to either go under those guidelines, that is, depart downward or vary downward, or go above those guidelines, that is, to vary or depart upwards." *Buckner*, No. 21-cr-30012-DWD, Doc. 50, pgs. 3-14. Petitioner indicated he "understood everything…discussed," and he did not need a moment to ask any questions of his attorney. *Id*. at Doc. 50, pgs. 14-15.[1] Petitioner confirmed he was satisfied

---

[1] The Plea Agreement itself provided as follows:

> [T]he Court is not bound by the parties' calculations of the US Sentencing Guidelines range set forth in this Plea Agreement or by the parties' sentencing recommendations. Therefore, the Court may impose a different sentence than what is described in this Plea Agreement— anywhere between the minimum sentence (if any) up to the statutory maximum sentence. If the Court imposes a different sentence than what is described in this Plea Agreement,

2

with his attorney's representation. *Id*. at Doc. 50, pg. 15. For these reasons, the Court accepted Petitioner's guilty plea as knowing and voluntary. *Id*. at Doc. 50, pgs. 15-16.

After the Change of Plea Hearing, a Presentence Investigation Report ("PSR") was prepared in advance of Petitioner's Sentencing Hearing. *Id*. at Sealed Doc. 30. The PSR revealed Petitioner's actual guideline sentencing range of 51 to 63 months of imprisonment was higher than the 27 to 33 month sentencing range anticipated by the parties in their Plea Agreement. *Id*. at Doc. 26, pg. 3; Sealed Doc. 30, pg. 13. This was because "the probation officer determined the defendant possessed a firearm with an attached large capacity magazine, which increased his base offense level. *Id*. at Sealed Doc. 30, pg. 13. The other portions of the PSR's guideline calculation were consistent with the parties' Plea Agreement. *Id*. at Doc. 26, pgs. 3-4; Sealed Doc. 30, pgs. 5-6.

The Court held Petitioner's Sentencing Hearing on January 12, 2023. (Doc. 39). At that Sentencing Hearing, the Court asked Petitioner whether he received a copy of the PSR, to which Petitioner answered "[y]es, sir." *Id*. at Doc. 51, pg. 3. Petitioner provided that same answer when asked by the Court whether he "had a chance to read" the PSR.

---

the parties shall not be permitted to withdraw from the Plea Agreement and the Defendant will not be permitted to withdraw the guilty plea.

*Buckner*, No. 21-cr-30012-DWD, Doc. 26, pg. 3.

Likewise, the Plea Agreement stated:

Defendant further recognizes that the final calculation will be determined by the Court after considering the Presentence Report, the views of the parties, and any evidence submitted. Regardless of the criminal history found by the Court, the parties will not be able to withdraw from this plea agreement and the Defendant will not be able to withdraw the guilty plea.

*Id*. at Doc. 26, pg. 5.

3

*Id*. The Court further asked: "From the front to the back, all of it? You've read it all? *Id*. Petitioner again answered, "yes, sir." *Id*. Petitioner provided that same answer to the Court's questions of "whether you had an ample opportunity to review it with your attorney" and whether "he's answered all of your questions and concerns about what is contained in the PSR." *Id*. The Court adopted the PSR after Petitioner answered in the affirmative that the PSR was "true and accurate in all respects." *Id*. at Doc. 51, pg. 4. Thereafter, Petitioner was sentenced to 54 months of imprisonment and 24 months of supervised release. *Id*. at Doc. 39. Petitioner did not directly appeal to the Seventh Circuit.

On January 5, 2024, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence under § 2255. (Doc. 1). Under *Strickland v. Washington*, 466 U.S. 668 (1984), he claims counsel provided ineffective assistance on the following grounds: (1) counsel failed to give Petitioner a copy of, or an opportunity to review and challenge, the PSR and to object to erroneous or misstated information contained in the PSR; (2) counsel failed to provide Petitioner with a copy, or to discuss the contents, of the parties' Plea Agreement; (3) counsel failed to inform Petitioner of the potential for a sentence above the guideline range set forth in the Plea Agreement; and (4) counsel failed to adequately meet with Petitioner to develop a defense to the Indictment, inform Petitioner of ongoing plea negotiations, and to apprise Petitioner of developments in the case. (Doc. 1, pgs. 3-5). Petitioner seeks a hearing or a sentence reduction on these grounds. (Doc. 1, pg. 5).

On January 30, 2024, in light of the nature of the above-discussed grounds for relief, the Government filed a Motion for an Order Authorizing Petitioner's Criminal Defense Attorney to Provide a Written Response to his claims under § 2255. (Doc. 3). The

4

Government argued Petitioner's allegations directly or indirectly implicated communications, including tactical decisions made in consultation with Petitioner, of Petitioner and his counsel, Mr. Jeffrey Goldfarb. (Doc. 3, pg. 1). The Government requested an affidavit from Mr. Goldfarb that addressed Petitioner's claims of ineffective assistance of counsel. (Doc. 3, pg. 1). Mr. Goldfarb "advised Government counsel that he [wa]s prepared to provide the requested affidavit, but [he] believe[d] that an order…authorizing him to provide it [wa]s advisable because his response w[ould] involve matters ordinarily covered by attorney-client privilege." (Doc. 3, pgs. 1-2). Therefore, the Government sought a finding that Petitioner, by placing his communications with Mr. Goldfarb at issue, waived the attorney-client privilege, such that Mr. Goldfarb could tender an affidavit to the Government. (Doc. 3, pg. 1).

On February 2, 2024, the Court noted Petitioner had not filed a Response to the Government's Motion. (Doc. 4, pg. 2). He was directed to do so within 14 days. (Doc. 4, pg. 2). Petitioner was warned, if he failed to respond, the Court would authorize Mr. Goldfarb to provide the affidavit that was requested by the Government. (Doc. 4, pg. 2).

Petitioner did not respond to the Government's Motion. Thus, on April 9, 2024, the Court granted the Motion, finding Petitioner waived the attorney-client privilege as to communications with Mr. Goldfarb that related to the allegations in his Motion under § 2255. (Doc. 5, pg. 2) (citing *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995); *Staszak v. U.S.*, No. 15-cv-20, 2015 WL 4474333, *1 (S.D. Ill. July 21, 2015)). Mr. Goldfarb was authorized to tender the affidavit, "limited to communications with

5

Petitioner about the allegations at issue," sought by the Government, which he has done. (Docs. 5, pgs. 2-3; 8-1) (citing *Seifer v. U.S.*, 225 F. Supp. 3d 811, 812 (E.D. Wisc. 2016)).

The Government filed its Response in Opposition to Petitioner's Motion under § 2255 on May 10, 2024. (Doc. 8). It argued Petitioner's counsel was not ineffective. First, the Government argues Petitioner's own answers to the Court's questions at the Sentencing Hearing, while under oath, refute the "conclusory allegation" that he was not provided a copy of the PSR. (Doc. 8, pgs. 17-19). Further, as to any claim of prejudice stemming from such an error, the Government stresses Petitioner failed to identify any error in the PSR that could have drawn an objection from counsel. (Doc. 8, pgs. 19-20).

Second, the Government argues the Court's Rule 11 colloquy with Petitioner at the Change of Plea Hearing, while he was under oath, refutes any unexplained claim that counsel failed to provide Petitioner with, or to discuss the contents of, the parties' Plea Agreement. (Doc. 8, pgs. 21-23). And, in light of the "overwhelming" evidence of the charged crime, Petitioner's recorded confession, the three-level reduction for his acceptance of responsibility, and the sentence at the low end of the guideline range, the Government argues the suggestion that Petitioner would have insisted on going to trial in the absence of such an error by counsel is "palpably incredible." (Doc. 8, pg. 23).

Third, the Government argues Petitioner's counsel was not ineffective for the alleged failure to inform Petitioner of the potential for a sentence outside of the guideline range contained in the Plea Agreement. (Doc. 8, pgs. 23-24).[2] The Government again relies

---
[2]The Government clarifies as follows:

on Petitioner's answers, while under oath, at the Change of Plea Hearing, including that he read the Plea Agreement, reviewed it with counsel, and signed it voluntarily. (Doc. 8, pgs. 24-25). The Plea Agreement, the Government continues, "states unambiguously" that "the Court is not bound by the parties' calculations of the US Sentencing Guidelines range set forth in th[e] Plea Agreement or by the parties' sentencing recommendations" and it "may impose a different sentence than what is described in th[e] Plea Agreement." (Doc. 8, pgs. 24-25). Accordingly, the Government argues Petitioner's unsupported allegation is refuted by the record. (Doc. 8, pg. 25). In any event, the Government argues Petitioner cannot show prejudice from such an error because, as quoted above from the Change of Plea Hearing, the Court itself "fully and accurately informed Petitioner of his sentencing exposure prior to accepting his guilty plea." (Doc. 8, pgs. 25-26).

Fourth, the Government argues Petitioner's counsel was not ineffective for the alleged failure to adequately meet or inform him of developments in the case. (Doc. 8, pg. 27). It notes Petitioner failed to provide any evidence that counsel's performance was objectively unreasonable. (Doc. 8, pg. 27). Contrary to Petitioner's claim, but consistent with counsel's Affidavit, the Government notes Petitioner acknowledges "[m]eetings

---

Petitioner claims that Mr. Goldfarb failed to inform him of "a potential sentence outside the Guidelines." And he further asserts that he "was sentenced based on an adjusted base offense Level of 17, with a criminal history level of II, which provides a sentencing range of 27 to 33 months." Petitioner is mistaken. His actual adjusted base offense level was 23, with a sentencing range of 51 to 63 months. This means, of course, that he did not receive a sentence outside the Guidelines range, so it could not have been prejudicial for Mr. Goldfarb to fail to warn him of an above-Guidelines sentence. Petitioner's claim is probably better construed as alleging that Mr. Goldfarb failed to inform him that his sentence could exceed the sentencing range anticipated by the parties' plea agreement.

(Doc. 8, pg. 24) (Emphasis in original omitted.) (cleaned up).

between Petitioner and defense counsel primarily consist[ing] of briefings just prior to court appearances." (Docs. 8, pg. 28; 8-1, pg. 1) (Emphasis in original omitted.). Further, according to the Government, the assertion that counsel failed to develop a defense for Petitioner on the facts of this case is "vague to the point of inscrutab[le]," as he "does not so much as hint at any viable defense that would have been available to him." (Doc. 8, pgs. 28-29). The Government notes the same is true with respect to the allegation that counsel failed to inform Petitioner of ongoing plea negotiations with the Government, "as he does not identify any specific information that Mr. Goldfarb allegedly withheld." (Doc. 8, pg. 29). As with his other claims, however, the Government argues Petitioner cannot show prejudice under any circumstance because, "given the strength of the evidence against him, Petitioner's unsupported allegation that, 'but for counsel's errors,' he would have pled guilty, is palpably incredible and must be rejected." (Doc. 8, pg. 30).

Finally, as an overarching matter, the Government notes Petitioner's Motion under § 2255 is not supported by an affidavit or signed under the penalty of perjury. (Doc. 8, pg. 22). The Government seeks a denial of the Motion without a hearing. (Doc. 8, pg. 30).

Having outlined the background of the case and the parties' arguments on Petitioner's alleged grounds for relief, the Court now resolves the Motion under § 2255.

## II. ANALYSIS

Under § 2255(a), the Court will grant the "extraordinary remedy" of vacating, setting aside, or correcting Petitioner's sentence only if he demonstrates "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

8

the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *Almonacid v. U.S.*, 476 F.3d 518, 521 (7th Cir. 2007). While § 2255(b) contemplates a hearing on motions filed under that section, such a hearing is not necessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord U.S. v. Taylor*, 605 F. Supp. 3d 1079, 1081 (N.D. Ill. 2022) (citing *Kafo v. U.S.*, 467 F.3d 1063, 1067 (7th Cir. 2006); *Almonacid*, 476 F.3d at 521); *see also U.S. v. Martin*, 549 F. Supp. 3d 767, 773 (N.D. Ill. 2021) (" [A]n evidentiary hearing is not required if the defendant's allegations are 'vague, conclusory, or palpably incredible rather than detailed and specific.' "). The undersigned, as the district judge who presided over Petitioner's underlying criminal case, "is 'uniquely suited to determine if a hearing [is] necessary.' " *See Taylor*, 605 F. Supp. 3d at 1081 (quoting *Rodriguez v. U.S.*, 286 F.3d 972, 987 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (7th Cir. 2002)).

As a substantive matter, the Sixth Amendment to the U.S. Constitution grants criminal defendants the right to the effective assistance of counsel. *Wyatt v. U.S.*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Watson v. Anglin,* 560 F.3d 687, 690 (7th Cir. 2009)). To prevail on a claim of ineffective assistance of counsel, Petitioner must prove his counsel's performance fell below an objective standard of reasonableness or, put another way, was "objectively deficient," and caused prejudice. *See id.* at 457-58 (citing *Strickland*, 466 U.S. at 687-88); *Galbraith v. U.S.*, 313 F.3d 1001, 1008 (7th Cir. 2002). "Both components of the test must be satisfied; 'the lack of either is fatal.' " *Clay v. U.S.*, 311 F. Supp. 3d 911, 918 (N.D. Ill. 2018) (quoting *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996)).

During this inquiry, it is presumed that Petitioner's counsel was "reasonably proficient." *Galbraith*, 313 F.3d at 1008 (citing *U.S. v. Godwin*, 202 F.3d 969, 973 (7th Cir. 2000)); *see also Wyatt*, 574 F.3d at 458 ("[A] movant must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' "); *Clay*, 311 F. Supp. 3d at 919 ("The central question in this analysis is not whether counsel's conduct deviated from best practices or most common custom, but instead, whether an attorney's representation amounted to incompetence under prevailing professional norms.") (cleaned up). Furthermore, on the question of prejudice, Petitioner must prove there was a reasonable probability that, absent counsel's objectively unreasonable or deficient performance, he would have insisted on proceeding to trial rather than plead guilty. *See Wyatt*, 574 F.3d at 458 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Galbraith*, 313 F.3d at 1008 (citing *Tezak*, 256 F.3d at 712; *U.S. v. Jordan*, 870 F.2d 1310, 1318 (7th Cir.1989)). In this context, a "reasonable probability" is a probability that sufficiently undermines confidence in the outcome of the proceedings, and it is not enough for Petitioner to identify errors that merely "had some conceivable effect on the outcome" of those proceedings. *Clay*, 311 F. Supp. 3d at 919 (quoting *Strickland*, 466 U.S. at 693-94; citing *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002)).

Here, as to each alleged ground for relief, Petitioner failed to satisfy each prong of the ineffective assistance of counsel inquiry. First, on the performance of counsel, the Government is correct that Petitioner's arguments are belied by the record. (Doc. 8, pgs. 17-19, 21-25). During the Rule 11 colloquy at the Change of Plea Hearing and the questioning of Petitioner at the Sentencing Hearing, Petitioner advised the Court while

under oath that, *inter alia*, he understood the possible penalties under the Indictment, he understood the Plea Agreement that he voluntarily signed after reading and reviewing it with counsel, and he received, read, and had ample opportunity to review and raise concerns about the PSR with counsel. *See Buckner*, No. 21-cr-30012-DWD, Docs. 26, pgs. 3, 5; 50, pgs. 3-14; 51, pg. 3. Moreover, the PSR was only adopted after Petitioner stated it was "true and accurate in all respects." *Id*. at Doc. 51, pg. 4. These statements are entitled to a presumption of verity that was not overcome in this case. *See U.S. v. Barr*, 960 F.3d 906, 917 (7th Cir. 2020) (Seventh Circuit noting it presumes the verity of a defendant's statements during a Rule 11 colloquy); *U.S. v. Vizcarra-Millan*, 15 F.4th 473, 499 (7th Cir. 2021) (Seventh Circuit acknowledging solemn declarations in open court carry a strong presumption of verity); *U.S. v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.").

Further, as noted by the Government, Petitioner does not indicate any specific basis on which the PSR was erroneous or inaccurate, any defense that could have been but was not raised by counsel, or any information regarding the plea negotiations or case that was withheld from Petitioner. (Docs. 1, pgs. 3-5; 8, pgs. 27-29). It is also true that Petitioner references meetings with counsel before his court appearances. (Docs. 1, pgs. 3, 5; 8, pg. 28). Finally, the Affidavit of Mr. Goldfarb, which Petitioner has not attempted to rebut, forcefully refutes each of Petitioner's unspecified and conclusory allegations. (Doc. 8-1). Under the above circumstances, Petitioner failed to show his counsel, at any

time, rendered an objectively unreasonable or deficient performance. *See Wyatt*, 574 F.3d at 457-58; *Galbraith*, 313 F.3d at 1008; *Clay*, 311 F. Supp. 3d at 919.

Second, even assuming counsel rendered an objectively unreasonable or deficient performance, as alleged in Petitioner's grounds for relief, the Court cannot find he was prejudiced. *See Wyatt*, 574 F.3d at 457-58; *Galbraith*, 313 F.3d at 1008; *Clay*, 311 F. Supp. 3d at 919. As to the PSR, he fails to cite any information that was erroneous or inaccurate. (Doc. 1, pg. 3). Therefore, even when putting aside Petitioner's sworn statements that he read, reviewed, and addressed concerns about the PSR with counsel, the Court cannot find he was prejudiced by unknown or unspecified errors or misstatements. *See U.S. v. Hise*, 65 F.4th 905, 908 (7th Cir. 2023) ("Hise fails to identify on appeal *any* objection that could have been made to the revised PSR. She has not pointed to any aspect of the PSR that was incorrect or which could be subject to an objection. Therefore, she has failed to provide any support for her bare allegation that timely objections would have impacted her sentence or restitution amount.") (Emphasis in original.).

Similarly, even if counsel did not provide a copy, or discuss the contents, of the Plea Agreement, which is an assumption that is belied by the record, Petitioner informed the Court at the Change of Plea Hearing, while under oath, that he understood the Court assesses the appropriate sentence, is not bound by the Plea Agreement, could agree or disagree with what Petitioner and the Government decided in relation to the appropriate sentence, and could depart upward from the guideline range contemplated by the Plea Agreement. *Buckner*, No. 21-cr-30012-DWD, Doc. 50, pgs. 3-14. Again, Petitioner's statements are entitled to a presumption of verity that he has not overcome in this case.

*See Barr*, 960 F.3d at 917; *Vizcarra-Millan*, 15 F.4th at 499; *Peterson*, 414 F.3d at 827. By explaining the effect of the Plea Agreement and the Court's discretion to impose an appropriate sentence in this way, and ensuring Petitioner's understanding of those matters, the Court neutralized any threat of prejudice stemming from the unreasonable or defective performance alleged in the second and third grounds for relief. *See Vinyard v. U.S.*, No. 10-cv-341, 2013 WL 6153268, *8-9 (S.D. Ill. Nov. 22, 2013) (concluding, in the context of an ineffective assistance of counsel inquiry, "even if petitioner's counsel did not advise him of his right to appeal, the Court did so, and, therefore, petitioner cannot show he was prejudiced by counsel's performance"); (Doc. 1, pgs. 3-4). It was only after ensuring this understanding of Petitioner that the Court found his guilty plea was knowing and voluntary. *See Buckner*, No. 21-cr-30012-DWD, Doc. 50, pgs. 15-16.

Finally, as to Petitioner's arguments regarding the Plea Agreement and the failure of counsel to meet with, develop a defense for, and provide updates to Petitioner, in particular, it is true he provided a recorded confession, received a three-level reduction for the acceptance of responsibility, and received a low-end guideline sentence. In light of these circumstances, not to mention the factual basis for the Indictment, the Court cannot find there is a reasonable probability that, absent any unreasonable or deficient performance, he would have proceeded to trial. *See Wyatt*, 574 F.3d at 458; *Galbraith*, 313 F.3d at 1008; *see also Bethel v. U.S.*, 458 F.3d 711, 718 (7th Cir. 2006) ("We have stated many times that a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice."). In short, the alleged errors have not

undermined confidence in the outcome of the criminal proceedings. *See Clay*, 311 F. Supp. 3d at 919.

### III. CONCLUSION

For the reasons explained above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under § 2255 is **DENIED** without a hearing. *See* 28 U.S.C. § 2255(b); *Taylor*, 605 F. Supp. 3d at 1081; *Martin*, 549 F. Supp. 3d at 773. The case is **DISMISSED with prejudice**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

Rule 11(a) of the Rules Governing § 2255 Cases in the United States District Courts requires the issuance or denial of a certificate of appealability when a final order is entered against an applicant like Petitioner. Such a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, Petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.' " *U.S. v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 281 (2004); citing *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir.2008)); *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court **FINDS** Petitioner's alleged grounds for relief lack merit, and reasonable jurists would not find that conclusion debatable or wrong. Therefore, since Petitioner has not made a "substantial showing of the denial of a constitutional right," the Court **DECLINES** to issue a certificate of appealability.

**SO ORDERED.**

Dated: April 14, 2025

s/ *David W. Dugan*

DAVID W. DUGAN
United States District Judge